**Antonio DIAZ CAMACHO, Plaintiff,**

v.

**Aurelio LOPEZ RIVERA, et al., Defendants.**

**Civ. No. 87–0845(PG).**

United States District Court, D. Puerto Rico.

Nov. 23, 1988.

Héctor González López, Santurce, P.R., for plaintiff.

Alejandro López Lorenzo, Dept. of Justice, Com. of P.R. Federal Litigation Div., San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Plaintiff is the former Chief of the Fire Station in the town of Corozal, Puerto Rico. On July 6, 1988, he filed the above-captioned complaint seeking declaratory judgment, damages and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202. He alleged, in essence, that defendants, officials of the Commonwealth Fire Department, discharged him from his post without affording him the due process of law to which he was constitutionally entitled and that defendants had conducted a search and seizure of his property which violated his rights under the Fourth Amendment. Defendants denied the allegations made in the complaint, and on November 14, 1988, the parties presented evidence in a non-jury trial before this Court.

### Findings of Fact

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, we find that the following facts were established at trial:

1. See Defense Exhibit C.

2. See Joint Exhibit I.

plaintiff had been a permanent employee of the Commonwealth Fire Department since 1970. By 1985, he had risen to the rank of Sergeant, had been placed in charge of the Corozal Fire Station, and had received several awards and commendations. In April 1985, defendant Aurelio López Rivera, at the time Chief of the Commonwealth Fire Department, received numerous oral complaints from the six or seven firemen which were under plaintiff's supervision at the Corozal Fire Station. Among other things, the firemen alleged that plaintiff made improper use of facilities and equipment, used foul language with his subordinates, and abused alcohol on the premises. In response, Chief López assigned Mr. Nestor Ortiz, Fire Chief of the Arecibo Area, the task of investigating the firemen's allegations. Ortiz conducted a thorough inquiry in which he took sworn statements from a number of people. He submitted his final report to Chief López in early 1986. In essence, Ortiz concluded that the charges were not unfounded and recommended that plaintiff be dismissed for violations of the Fire Department's internal regulations.[1]

On April 21, 1986, defendant Dora López Díaz, the Fire Department's legal advisor, prepared and sent a letter, signed by Chief López, in which plaintiff was notified of the charges made against him and informed that he would be sanctioned with dismissal.[2] The letter also informed plaintiff of his right to request an administrative hearing within 15 days, where he would be able to present evidence and confront the witnesses against him, if he so desired.

Upon receipt of this letter, plaintiff contacted attorney Hugo Rodríguez, who assumed his representation. On April 25, 1986, attorney Rodríguez filed a timely petition with the Fire Department in which he indicated his client's desire to exercise his right to an administrative hearing.[3] At that time he also sent the Fire Department a series of interrogatories requesting copies of Chief Ortiz's report, copies of any sworn statements taken in connection with

3. See Joint Exhibit II.

it, the names of any witnesses scheduled to testify at the hearing, and a summary of the content of their testimony.[4] In response, Chief López and his legal advisor sent plaintiff a letter dated May 5, 1986, setting the hearing for May 23, 1986, and suggesting that since the documents sought were "voluminous," they could be examined more easily at the Fire Department's Central Offices.[5]

On May 8, 1986, plaintiff, through his attorney, filed a petition to continue the hearing since attorney Rodríguez had a previously scheduled trial which conflicted with the May 23 date.[6] Rodríguez suggested June 11, 12 and 17 as alternate dates for the hearing. Upon receipt of this petition, attorney López Díaz called plaintiff's attorney to schedule a meeting so that Rodríguez and his client could examine any documents they wished and to reschedule the administrative hearing for June 12, 1986. Attorney Rodríguez did not recall being notified of the June 12 date but admitted that both he and plaintiff went to attorney López's office on either May 14 or May 20 and examined all available documents for about 45 minutes. They were unable to make copies of the documents, however, because the office copier was out of order.

On May 15, 1986, attorney López sent a memo to the members of the Fire Department's Investigatory Committee summoning them for the hearing scheduled for June 12.[7] However, on June 12 plaintiff and his counsel failed to appear, and the hearing was cancelled.

On June 17, 1986, Chief López and his legal advisor sent plaintiff a letter notifying him that yet another hearing had been scheduled for June 26, 1986, and warning him that should he fail to appear at this third and final hearing, he would be deemed to have waived his right to it, and charges would accordingly be formulated against him.[8] Upon receipt of this letter, plaintiff filed a petition dated June 20, 1986, asking Chief López to continue the June 26 hearing on the grounds that he had yet to receive the information sought in his interrogatories.[9] Upon receipt of this petition, attorney López Díaz called attorney Rodríguez and told him that he would receive two copies of Chief Ortiz's report and of the sworn statements at the hearing on June 26. Nevertheless, on June 26 plaintiff and his counsel once again failed to appear. Subsequently, on July 2, 1986, Chief López notified plaintiff that he had been discharged from his post and advised him of his right to appeal said decision.[10]

On July 3, 1986, two officials from the Puerto Rico Justice Department went to the Corozal Fire Station with the intention of removing certain official documents from the office which had previously been occupied by plaintiff. Said office was primarily used to store official records and some maintenance equipment. After unsuccessful attempts to locate plaintiff, who was apparently on vacation and who possessed the only key to the office, the officials called attorney López Díaz and informed her that they intended to break the lock in order to gain access to the office. She told them that she did not object to them doing their job. The officials then proceeded to break the locks on the door, the desk inside the office and a small storage compartment also within the office. After removing all of the materials contained therein, including, according to plaintiff, some of his own personal property, the officials installed new locks. Plaintiff never attempted to reclaim any of the personal items which were allegedly taken.[11]

---

4. See Plaintiff's Exhibit 1.

5. See Joint Exhibit III.

6. See Joint Exhibit IV.

7. See Defense Exhibit A.

8. See Joint Exhibit V.

9. See Plaintiff's Exhibit 18.

10. See Joint Exhibit VI.

11. Plaintiff claimed that the following items were taken from the desk drawer: photographs of his daughter's wedding and mother's funeral, payment books for his car loan and home mortgage.

After learning of the decision against him, plaintiff filed an appeal before the corresponding Board of Appeals. Although testimony was heard at trial as to the trajectory of plaintiff's appeal, we need not discuss it here as it is irrelevant to the issues which we must decide.

### Conclusions of Law

The case at bar presents two distinct legal issues: 1) whether the plaintiff was deprived of a property interest without due process of law in violation of the Fourteenth Amendment;[12] 2) whether the plaintiff's property was illegally seized in violation of the Fourth Amendment.

### I.

■ We turn first to the question of whether or not plaintiff was afforded due process of law as required by the Fourteenth Amendment. More specifically, the issue in the case at bar is whether or not plaintiff received proper notice and an opportunity to be heard before being deprived of a property interest.[13] If he did not, then he is entitled to damages under 42 U.S.C. § 1983. *See Parrat v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

An essential principle of due process is that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Cleve-land Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story, because "to require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546, 105 S.Ct. at 1495. *See also Arnett v. Kennedy,* 416 U.S. 134, 170–171, 94 S.Ct. 1633, 1652, 40 L.Ed.2d 15 (1974) (Opinion of Powell, J.); *Id.* at 195–196, 94 S.Ct. at 1664–1665 (Opinion of White, J.); *Goss v. López,* 419 U.S. 565, 581, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975).

In the case at bar we are convinced that plaintiff received adequate notice and opportunity to be heard under the standard set forth in *Loudermill.* Chief López's April 21 letter plainly apprised plaintiff of the charges against him and of his right to request a hearing. Plaintiff was given the opportunity to examine all of his employer's evidence and present his own when he and his attorney visited the Fire Department's Legal Office on May 14 or 20. Subsequent to this he had at least two further opportunities to present his side of the story, which he unjustifiedly failed to avail himself of.[14] He was warned that failure

---

**12.** Although plaintiff's complaint also alleged that plaintiff had been deprived of a liberty interest, there was no evidence presented at trial that plaintiff's good name or reputation in the community had been adversely affected by defendants' actions, as required by *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). Therefore, we need not address the legal issues surrounding this allegation.

**13.** It is undisputed that, as a permanent employee of the Commonwealth Fire Department, plaintiff had a "property interest" in continued employment, *see Board of Regents v. Roth,* 408 U.S. 564, 576–578, 92 S.Ct. 2701, 2708–2710, 33 L.Ed.2d 548 (1972), which he could not be deprived of without due process. *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–1562, 56 L.Ed.2d 30 (1978).

**14.** At trial, plaintiff and his attorney Hugo Rodríguez claimed their failure to attend the June 12 hearing was due to lack of notice. However, defendant Dora López testified that she had previously informed plaintiff's counsel of the June 12 date by telephone when she had invited him to come to her office to examine the evidence against plaintiff. Her testimony is supported by a memorandum dated May 15 in which she informed the Investigatory Committee that plaintiff's hearing had been rescheduled for June 12 (See Defense Exhibit "A"). Moreover, plaintiff himself had suggested June 12 as a possible date for a new hearing when he requested a continuance of the May 23 hearing. His claim that he lacked notice of the June 12 hearing date thus seems rather incredible.

Plaintiff's justification for his failure to attend the hearing scheduled for June 26 also rings hollow. In his June 20 petition he had requested that the June 26 hearing be postponed because he had allegedly not been provided the information sought in his April 25 interrogatories. However, plaintiff and his attorney both admitted at trial that on May 14 or 20 they had gone to defendant Dora López's office and ex-

to appear at the June 26 hearing would result in his waiver of his right to it and the formulation of charges against him. "In light of [his unjustified] failure to appear at what were apparently properly scheduled hearings, [plaintiff] cannot now complain that the termination procedures did not afford him due process." *Grant v. Board of Education of the City of New York*, No. 75 Civ. 1676 (LWP) (S.D.N.Y. Jan. 29, 1982) (LEXIS, Genfed Library, Dist. file). For due process requires only an opportunity to be heard; if an individual chooses not to take advantage of that opportunity, due process has nevertheless been satisfied. *D'Acquisto v. Washington*, 640 F.Supp. 594, 623 (N.D.Ill.1986). *See also Dusanek v. Hannon*, 677 F.2d 538, 542–543 (7th Cir.1982). (Availability of recourse to constitutionally sufficient administrative procedure satisfies due process requirements if complainant merely declines or fails to take advantage of administrative procedure). *Accord, Bonilla v. Rodríguez*, 635 F.Supp. 148, 153 (D.P.R.1986).

## II.

The other issue presented here is whether the Justice Department officials' entry into plaintiff's former office and their seizure of the personal property contained therein violated the Fourth Amendment. If so, plaintiff would be entitled to damages under section 1983 for this constitutional deprivation as well. *Parrat, supra.*

■ At the outset we note that the evidence does not suggest that defendants instigated or in any way authorized the actions of the two Justice Department officials who entered and searched plaintiff's former office. The officials apparently acted independently and merely called defendant Dora López to inform her that they intended to break the lock on plaintiff's former office in order to gain access for some unspecified reason. In light of this, we think plaintiff's case lacks the essential

element of proximate cause, which precludes our holding defendants liable for the independent actions of the Justice officials. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (ovrld. on other grounds, *Monell v. Department of Social services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (§ 1983 should be read against background of tort liability which makes man responsible only for natural consequences of his actions).

■ However, even assuming arguendo that defendants authorized or aquiesced in the Justice Department officials' actions, we do not believe that plaintiff's Fourth Amendment rights were violated in this case. For purposes of the following Fourth Amendment analysis, we also assume that plaintiff had a "reasonable expectation of privacy" *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967), in his former office despite the fact that his employment (and arguably, by analogy, his expectation of privacy) had been terminated the day before the search took place.

The Fourth Amendment protects only against "unreasonable" searches and seizures. U.S. Const. amend. IV. In determining the reasonableness of a search conducted by a public employer "we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control and the efficient operation of the workplace." *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 1499, 94 L.Ed.2d 714 (1987). Thus, an employer need not have a warrant or even probable cause to conduct a legitimate "work related" noninvestigatory search or to investigate work related misconduct. *Id.* 107 S.Ct. at 1500–1502. What is required, instead, is that both the inception and the scope of the instrusion be reasonable. *Id.* 107 S.Ct. at 1502–1503. Ordinarily, a search of an employee's office

---

amined Chief Ortiz's report of the investigation upon which the charges against plaintiff were based. This report contains the names of all witnesses against plaintiff, and a specific summary of their allegations—precisely the information which plaintiff's interrogatories sought

to discover. Moreover, in response to plaintiff's June 20 petition, Dora López had informed plaintiff's counsel that he would receive copies of the Report at the hearing. In light of these facts, we find that plaintiff's failure to appear at the June 26 hearing was also unjustified.

by his or her employer will be justified at its inception when "there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work related misconduct, or that the search is necessary for a noninvestigative work related purpose such as to retrieve a needed file." *Id.* 107 S.Ct. at 1503. The search will be permissible in its scope when "the measures adopted are reasonably related to the objectives of the search and not excessively instrusive in light of ... the nature of the [misconduct]." *Id.* (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 342, 105 S.Ct. 733, 743, 83 L.Ed.2d 720 (1985)).

Under *O'Connor,* it is clear to us that even if defendants were somehow responsible for the search conducted here, it did not violate plaintiff's Fourth Amendment rights. There were certainly reasonable grounds to suspect that plaintiff was guilty of work related misconduct and that the search of his former office might turn up evidence thereof. Alternatively, the search may have had a noninvestigative work related purpose since the office was primarily used to store the Fire Station's official records as well as maintenance and other equipment. In any event, the search was reasonable at its inception. It was likewise permissible in its scope since the officials did not act unreasonably in supposing that either official records or evidence of misconduct might be found in any of all of the places searched.

In conclusion, we find that defendants did not violate any of plaintiff's constitutional rights. Plaintiff is thus not entitled to any of the relief requested.

WHEREFORE, for the above stated reasons, the Court hereby ORDERS that judgment be entered in favor of the defendants.

IT IS SO ORDERED.